James E. Torgerson (Bar No. 8509120)
jetorgerson@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: (907) 277-1900
Facsimile: (907) 277-1920

Attorney for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARTHUR S. ROBINSON and ALLAN BEISWENGER, | Case No.: 3:13-cv-00086-HRH |
| Plaintiffs, | |
| v. | |
| FAEGRE BAKER DANIELS LLP, | |
| Defendant. | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### *(RULE 56)*

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................. 1

    A.    Plaintiffs' Claims Arise Out of the *Exxon Valdez* Litigation.............................1

        1.    This Court Established the 3% Fund and Fee Committee. ........................2

        2.    The Fee Agreement Specifies the Fees to Which It Applies. .....................4

        3.    Faegre's Contributions to the *Exxon Valdez* Litigation Were Much
            Greater Than RB&E's. ........................................................................5

        4.    This Court Allocated the 3% Fund Based on Contributions for the
            Common Good of All Exxon Valdez Plaintiffs............................................8

    B.    Plaintiffs Have Now Demanded Additional Payments from Faegre.................11

III. STANDARD OF REVIEW ................................................................................ 12

IV. ARGUMENT...................................................................................................... 13

    A.    Allocation of the 3% Fund Was Subject to the Court's Equitable
        Authority, Which This Court Already Has Exercised. ......................................13

        1.    Principles Governing the Allocation of Attorneys' Fees in Class
            Actions Apply Here. ..............................................................................13

        2.    The Allocation of Attorney' Fees in Class Actions Is Based on
            Principles of Equity, and the Court Has the Authority to Reject a
            Private Fee-Sharing Contract....................................................................14

        3.    This Court Allocated Awards from the 3% Fund Using the
            Appropriate Equitable Principles...............................................................19

        4.    Plaintiffs' Right to Fee Payments from the 3% Fund Is Exclusively
            Subject to This Court's Jurisdiction and Is Not Arbitrable. .....................20

        5.    This Court's Fee Decision Should Be Given Collateral Estoppel
            Effect.....................................................................................................21

    B.    Even Under Its Own Terms, the Fee Agreement Does Not Cover Funds
        Awarded from the 3% Fund...........................................................................22

    C.    Division of Fees Is Subject to Alaska Bar Rule 35(e), Which Requires
        Division Based on Services Performed. ...........................................................26

    D.    The Arbitration Clause Is Unenforceable Due to Impossibility. .......................27

V. CONCLUSION .................................................................................................. 29

**STOEL RIVES** LLP

510 L Street, Suite 500, Anchorage, AK 99501

*Main (907) 277-1900   Fax (907) 277-1920*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page i

Page(s)

**Cases**

*Alaska v. Pub. Safety Emps. Ass'n*,
798 P.2d 1281 (Alaska 1990) ................................................................................. 13

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................. 17, 18, 19, 20

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .................................................................................... 13, 23

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................ 15

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ............................................................................ 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................ 12

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885) ................................................... 15

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
19 F.3d 1306 (9th Cir. 1994) ............................................................................. 15

*Dep't of Revenue v. Cowgill*,
115 P.3d 522 (Alaska 2005) ............................................................................... 24

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 216 (2d Cir. 1987) ................................................................. 16, 17, 18, 27

*In re Ahaza Sys., Inc.*,
482 F.3d 1118 (9th Cir. 2007) ............................................................................ 13

*In re the Exxon Valdez*,
Case No. A89-0095-CV-HRH ..................................................................... passim

*In re FPI/Agretech Secs. Litig.*,
105 F.3d 469 (9th Cir. 1997) ..................................................................... passim

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ............................................................................. 16

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900    Fax (907) 277-1920

**STOEL RIVES LLP**

510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900    Fax (907) 277-1920

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013) ............................27

*Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*,
    157 P.3d 470 (Alaska 2007)................................................................................13, 23

*McAlpine v. Pacarro*,
    262 P.3d 622 (Alaska 2011).......................................................................................21

*N. Corp. v. Chugach Elec. Ass'n*,
    518 P.2d 76 (Alaska), *vacated on other grounds by* 523 P.2d 1243 (Alaska 1974)...............28

*Okagawa v. Yaple*,
    234 P.3d 1278 (Alaska 2010).....................................................................................24

*Rivera v. Philip Morris, Inc.*,
    395 F.3d 1142 (9th Cir. 2005) ....................................................................................12

*Trustees v. Greenough*,
    105 U.S. 527, 26 L. Ed. 1157 (1881)..........................................................................15

*Valdez v. Valdez Dev. Co.*,
    523 P.2d 177 (Alaska 1974)..................................................................................28, 29

**Statutes**

AS 09.43.010(a) .................................................................................................................13

AS 09.43.020(a) ...........................................................................................................13, 23

AS 09.43.030 .....................................................................................................................28

**Rules**

Alaska Bar Rule 34(a)...................................................................................................28, 29

Alaska Bar Rule 35(a).........................................................................................................26

Alaska Bar Rule 35(e).........................................................................................................26

Alaska Bar Rule 35(e)(1)....................................................................................................27

Alaska Bar Rule 40.............................................................................................................29

Alaska Bar Rule 40(a).........................................................................................................29

Fed. R. App. P. 4................................................................................................................22

Fed. R. Civ. P. 23(e) .....................................................................................................15, 27

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page iii

Fed. R. Civ. P. 56...................................................................................................................1, 29

Fed. R. Civ. P. 56(a) ..........................................................................................................12

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900    Fax (907) 277-1920*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page iv

# I. INTRODUCTION

Arthur Robinson and Allan Beiswenger (Plaintiffs) seek appointment of arbitrators to decide if they are entitled to a share of the attorneys' fees awarded to Faegre Baker Daniels LLP (Faegre) from a fund this Court established in *In re the Exxon Valdez* (the 3% Fund).[1] But this Court, which has the exclusive authority to allocate common funds in class actions, already allocated attorneys' fees from the 3% Fund. The issue is not subject to arbitration or collateral attack. Even if the issue had not already been decided by the Court, the parties' Fee Division Modification Agreement (Fee Agreement) – and thus its Arbitration Clause – does not apply to awards from the 3% Fund. Further, the Arbitration Clause is unenforceable because it is impossible to perform. Faegre therefore asks the Court to dismiss Plaintiffs' Complaint for Appointment of Arbitrators (Complaint) as a matter of law, pursuant to Federal Rule of Civil Procedure 56.

# II. FACTUAL BACKGROUND

## A. <u>Plaintiffs' Claims Arise Out of the *Exxon Valdez* Litigation.</u>

The Fee Agreement at issue relates to a case with which the Court is familiar: *In re the Exxon Valdez*.[2] As the Court knows, that case resulted from the consolidation into a single case before this Court of multiple federal and state lawsuits.[3] By order of this Court, all plaintiffs' claims in *Exxon Valdez* (Exxon Valdez Plaintiffs) were managed through a Case Management Team (CMT), which included Co-Lead Counsel and Lead

---

[1] Case No. A89-0095-CV-HRH.

[2] *See* Declaration of James Torgerson in Support of Defendant's Motion for Summary Judgment, Ex. A (Fee Agreement)(Dec. 18, 2013); *see also* Complaint (Dkt. 1). *See In re the Exxon Valdez*, Case No. A89-0095-CV-HRH (*Exxon Valdez*).

[3] *Exxon Valdez*, Dkt. No. 7837, Order No. 365 re Class Counsel's Renewed Motion for Award of Attorney Fees and Costs (Jan. 29, 2004) (Order No. 365), p. 3 (attached as Exhibit I to the Torgerson Decl. (Dec. 18, 2013)); Complaint, ¶ 10 (Dkt. 1).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 1 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

Trial Counsel.[4] Brian O'Neill of Faegre & Benson, the predecessor of Defendant Faegre (hereinafter, collectively, "Faegre"), served as Lead Trial Counsel.[5] In 1994, the Court certified a mandatory punitive damages class.[6]

### 1. This Court Established the 3% Fund and Fee Committee.

This Court ordered, on December 22, 1989, that counsel for Exxon Valdez Plaintiffs agree on an overall fee structure.[7] Co-Lead Counsel David Oesting and Jerry Cohen asked all counsel, as of March 1, 1990, to provide monthly reports dividing all time spent on the case into 13 designated categories.[8] In a memorandum of February 28, 1992, Co-Lead Counsel further requested that all time be recorded by Exxon Valdez Plaintiffs' counsel to one of the following three categories:

- "P Time:" work performed at the request of Lead Counsel for case management activities or work that benefited both class-action and direct-action claimants;

- "C Time:" work performed for class-action claims only; and

- "I Time:" work performed by direct-action counsel on matters directed to their clients and cases.[9]

Shortly thereafter, on March 26, 1992, the Court issued an Order Establishing

---

[4] *Exxon Valdez*, Dkt. No. 748 (Dec. 22, 1989) (Order No. 9); *Exxon Valdez*, Dkt. No. 4856, Order Granting Conditional Final Approval and Certifying Mandatory Punitive Damages Class (Apr. 15, 1994) (Order No. 204), pp. 2-3 (attached as Exhibit E to the Torgerson Decl. (Dec. 18, 2013)); *Exxon Valdez*, Dkt. No. 9078, Declaration of Matthew D. Jamin (Apr. 30, 2009) (First Jamin Decl.), ¶ 5 (attached as Exhibit L to the Torgerson Decl. (Dec. 18, 2013)); *see also* Order No. 365, pp. 6-7.
[5] *Exxon Valdez*, Dkt. No. 9080, Affidavit of Brian B. O'Neill (Apr. 30, 2009) (O'Neill Aff.), ¶ 47 (attached as Exhibit M to the Torgerson Decl. (Dec. 18, 2013)).
[6] Order No. 204.
[7] Order No. 9; First Jamin Decl., ¶ 5.
[8] First Jamin Decl., ¶¶ 6-8; Declaration of Matthew D. Jamin, ¶ 5 (Dec. 18, 2013) (Second Jamin Decl.).
[9] First Jamin Decl., ¶¶ 13-14; Second Jamin Decl., ¶ 5 (Dec. 18, 2013).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 2 of 30

Regime for Compensation of Plaintiffs' Counsel (Compensation Order). [10] The

Compensation Order established the fund at issue in this litigation (the 3% Fund),

providing, in relevant part:

> Three percent of any recovery received by any plaintiff,
> individually or as a member of a certified class, whether by
> judgment, settlement or otherwise, after February 14, 1991,
> shall be contributed to the Consolidated Case Fund [the 3%
> Fund].[11] . . .
>
> Counsel who are active members of the CMT or who
> perform administrative and/or other tasks benefitting the
> combined plaintiffs at the request or direction of Co-Lead
> Counsel or the CMT may apply for compensation from the
> Consolidated Case Fund, whether or not said counsel are
> also applying for compensation from the Class Action
> Attorneys Fees Fund or being paid by their individual
> clients pursuant to engagement agreements.[12]

The Compensation Order additionally established a Fee Committee, consisting of

five Exxon Valdez Plaintiffs' attorneys, charged with the monitoring the hours and fees

of all Exxon Valdez Plaintiffs' counsel and recommending the appropriate allocation of

fees among counsel. [13]  The Fee Committee was headed by Matt Jamin; O'Neill also

served on the Committee. [14]  Over the course of the litigation, the Fee Committee

extensively audited counsel's time submissions to ensure compliance with its guidelines,

---

[10] *Exxon Valdez*, Dkt. No. 2396, Order Establishing Regime for Compensation of
Plaintiffs' Counsel (March 26, 1992) (Compensation Order)(attached as Exhibit D to the
Torgerson Decl. (Dec. 18, 2013)); Order No. 365, p. 13; First Jamin Decl., ¶ 15.
[11] For purposes of this Motion, the Consolidated Case Fund shall be referenced as "the
3% Fund."
[12] Compensation Order, p. 2 (emphasis added); Order No. 365, p. 13; Complaint, ¶ 14
(Dkt. 1)(misidentifying the Compensation Order as Order No. 365).
[13] Compensation Order, p. 4; Order No. 365, p. 14; First Jamin Decl., ¶ 11; Second Jamin
Decl., ¶ 4 (Dec. 18, 2013).
[14] O'Neill Aff., ¶ 8; First Jamin Decl., ¶¶ 1, 11; Second Jamin Decl., ¶ 4 (Dec. 18, 2013).
O'Neill replaced original Fee Committee member Bob Cowan following Cowan's death
in November 2003. First Jamin Decl., ¶ 11.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 3 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

including accurate designation of time in the categories of P Time, C Time, and I Time.[15]

       **2.**       **The Fee Agreement Specifies the Fees to Which It Applies.**

Early in the *Exxon Valdez* litigation, Faegre entered into a fee-splitting agreement with the firm of Robinson, Beiswenger & Ehrhardt (RB&E) for their joint representation of certain direct-action claimants.[16]  Plaintiffs in this litigation are two of the named partners from RB&E, which dissolved in 1998.[17]

On June 23, 1992, Faegre and RB&E executed the Fee Agreement that is the subject of the present litigation.[18]  The Fee Agreement, which superseded the parties' earlier letter agreements,[19] contained the following provisions related to the division of fees:

> 5.    <u>Exxon Fees</u>
>
> (a)    <u>Fee Division</u>
>
> (i)    Attorney's fees for all claims, except those set forth in section (a)(ii) of this paragraph, shall be divided on the basis of 70% to [Faegre] and 30% to RB&E <u>of the contingent fees collected from the client</u>.
>
> (ii)    All fees for claims originated by firms other than RB&E or [Faegre] and referred to either firm for representation after April 15, 1992, shall be divided (from the allocated share of fees paid to [Faegre] by other firms) on the basis of 90% to [Faegre], 10% to RB&E.  However, any and all Upper Cook Inlet set and drift net claims so referred shall not be subject to this division and are subject

---

[15] First Jamin Decl., ¶¶ 17-20, 26.

[16] Torgerson Decl., Exs. B (04/28/89 Letter Agreement), C (10/30/90 Letter Agreement)(Dec. 18, 2013); Complaint, ¶¶ 12-13 and Exs. 2-3 (Dkt. 1).

[17] Complaint, ¶ 2 (Dkt. 1).  The third named partner from RB&E, Peter Ehrhardt is not a party and has expressed his disagreement with Plaintiffs' course of action in this litigation.  *See* Torgerson Decl., Ex. U (08/29/12 Letter from Ehrhardt).

[18] Fee Agreement; Complaint, ¶ 16 and Ex. 1 (Dkt. 1).

[19] Fee Agreement, p. 1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 4 of 30

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900   Fax (907) 277-1920*

to the division of fees as set forth in paragraph 5, section (a)(i); and

(iii)    All <u>hourly fees</u> paid to both firms from the Exxon case management fee structure approved by the court or from any other source shall be allocated on the same basis, 70% [Faegre], 30% RB&E.[20]

The Fee Agreement included an arbitration clause (Arbitration Clause):

<u>Arbitration:</u>  Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in accordance with the rules of the Alaska Bar Association.   Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.[21]

### 3.    Faegre's Contributions to the *Exxon Valdez* Litigation Were Much Greater Than RB&E's.

The *Exxon Valdez* case was tried in multiple phases over a period of four and half months in 1994, resulting in significant awards to Exxon Valdez Plaintiffs of compensatory and punitive damages.[22]  Appeals to the Ninth Circuit and U.S. Supreme Court followed, as did the 2002 trial of several municipalities' claims against Exxon.[23]

Faegre played a prominent role in litigating the *Exxon Valdez* case.  It was aptly summarized in Plaintiffs' Motion for Allocation of Consolidated Fund,[24] filed in *Exxon Valdez* in April 2009:

Mr. O'Neill served as Lead Trial Counsel for the 1994 federal trial.   As Lead Trial Counsel, he oversaw development of all portions of the case leading up to and during the trial. . . .  During trial, he conducted voir dire,

---

[20] *Id.* at 3-4, § 5(a) (emphases added); Complaint ¶ 17 (Dkt. 1).

[21] Fee Agreement, p. 6, § 6 (emphasis in original).

[22] O'Neill Aff., ¶¶ 43-44; Order No. 365, pp. 7-8.

[23] O'Neill Aff., ¶¶ 59-67; Order No. 365, pp. 9-12.

[24] *Exxon Valdez*, Dkt. No. 9077, Plaintiffs' Motion for Allocation of Consolidated Case Fund (Apr. 30, 2009) (Motion for Allocation) (attached as Ex. N to the Torgerson Decl. (Dec. 18, 2013)).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 5 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

delivered all of the opening statements and closing arguments, and examined 49 of the 79 live witnesses.

Mr. O'Neill also conducted all 20 of the examinations during the 1995 investigation of alleged juror misconduct. During the 2002 municipalities trial, he did the voir dire, opening statement, closing argument, and all 17 witness examinations.

In addition to his work as Lead Trial Counsel, Mr. O'Neill served on the Plaintiffs' Allocation Committee, served on the Fee Committee, chaired the Damages Committee and had significant responsibility for client outreach.

Mr. O'Neill was also one of the key members of the appeals Team. He argued six appeals to the Ninth Circuit, argued the related motions to this Court, including the punitive damages issues on remand from the Ninth Circuit, and participated in briefing to the Supreme Court. Mr. O'Neill's work on this case has consumed more than 75% of his time during twelve of the past twenty years.

The Faegre & Benson firm has contributed significant additional personnel to this case. For example, Faegre lawyers . . . participated heavily during the discovery phase, including taking and defending many depositions. Depositions taken by Mr. Nolting were among the most useful when it came time to try the case. Messrs. Schroer and Nolting also participated in the substantial motion practice arising out of discovery disputes.

The Faegre firm provided a total of six lawyers and four staff to the trial team for the 1994 federal trial. . . .

Similarly, Faegre & Benson contributed to the 2002 municipalities trial. . . .

In the years since trial, Faegre & Benson lawyers contributed substantially to the research and briefing efforts of the Law Team. In addition, [Faegre] . . . coordinated the amicus briefing in support of plaintiffs in the United States Supreme Court. . . . The work of lawyers from the firm

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 6 of 30

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900   Fax (907) 277-1920*

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

accounts for nearly one-quarter of the PL[25] time on the case during the period 1995-2008.

Faegre & Benson also contributed substantially to the funding of the litigation. It contributed approximately $4.9 million of the firm's own funds to underwrite the Plaintiffs' Joint Venture.[26]

Between 1989 and 2008, Faegre contributed 73,167 hours of P Time (work performed at the request of Lead Counsel for case management activities or for work that benefitted <u>all</u> Exxon Valdez Plaintiffs),[27] comprising 10.3% of the total hours of P Time logged on the case by all firms.[28] Faegre's 73,167 hours of P Time did not include time spent on claims administration. Faegre's work comprised 14.5% of all such non-claims administration hours logged on the case by all firms; only one other firm contributed more such time.[29] Between 1994 and 2008, Faegre contributed 21.5% of the total P Time logged on the case by all firms, with only one other firm contributing more P Time.[30] In addition, Faegre's contribution of $4,887,019 of its own money toward financing the *Exxon Valdez* litigation was almost $2 million more than the next highest contributor.[31]

In contrast to Faegre's critical and extensive role on behalf of all Exxon Valdez Plaintiffs, RB&E's role in the *Exxon Valdez* litigation focused exclusively on work performed for the benefit of its direct-action clients.[32] While Faegre invested 73,167

---

[25] PL time was a sub-category of P Time, involving time devoted to pleadings, motions, and legal research that applied across class/direct categories. First Jamin Decl., p. 7, n.2.

[26] Motion for Allocation, pp. 28-30; *see* O'Neill Aff., ¶¶ 1, 2, 8, 12, 31-87; First Jamin Decl., ¶¶ 42, 70, 80-82, 86-94, 99, 101.

[27] *See* First Jamin Decl., ¶¶ 13-14.

[28] *Id.* at ¶ 108; *see also* Second Jamin Decl., ¶ 6 (Dec. 18, 2013).

[29] First Jamin Decl., ¶ 110.

[30] *Id.* at ¶ 111.

[31] *Id.* at ¶ 112.

[32] *See* Second Jamin Decl., ¶ 6 (Dec. 18, 2013).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 7 of 30

hours of P Time, RB&E invested <u>none</u>.[33]

    **4.    This Court Allocated the 3% Fund Based on Contributions for the Common Good of All Exxon Valdez Plaintiffs.**

This Court approved the Plan of Allocation in 1996,[34] which reiterated that "[t]hree percent of recoveries would be set aside for contribution to the [3%] Fund, created by the courts to compensate plaintiffs' counsel for <u>work done for the common good of all plaintiffs</u>."[35] The Court's Order No. 365, issued in January 2004, further confirmed the applicability and purpose of the 3% Fund: for the compensation of "[c]ounsel who are active members of the CMT or who <u>perform administrative and/or other tasks benefitting the combined plaintiffs at the request or direction of Co-Lead Counsel or the CMT</u>."[36]

Early in 2006, the Fee Committee asked Committee Chair Matt Jamin to create a memorandum detailing suggestions for the division of the 3% Fund among counsel.[37] Jamin extensively analyzed the contributions of the approximately 70 firms that had submitted time to the Fee Committee and issued his recommendations to the Committee on May 10, 2006.[38] He recommended that RB&E, as with the other 26 firms that did not

---

[33] First Jamin Decl., ¶ 35; *see also* Second Jamin Decl., ¶ 6 (Dec. 18, 2013); Torgerson Decl., Ex. J (05/10/06 Fee Committee Memo), p. 8, and Ex. K (06/12/07 Fee Allocation Memo), p. 3 (Dec. 18, 2013).

[34] *Exxon Valdez*, Dkt. No. 6603 (Jan. 19, 1996); *Exxon Valdez*, Dkt. No. 6806, Order No. 317 (June 11, 1996); *see also* Legal Notice of Court Hearing on Plaintiffs' Request for Approval of Proposed Distribution Plans of Recoveries by Plaintiffs in the Exxon Valdez Oil Spill Litigation (attached as Ex. H to the Torgerson Decl. (Dec. 18, 2013)).

[35] *Exxon Valdez*, Dkt. No. 6806, Plan of Allocation of Recoveries Obtained by Plaintiffs in Litigation Arising From the Exxon Valdez Oil Spill (Jan. 12, 1996) (Plan of Allocation) (emphasis added)(attached as Ex. G to the Torgerson Decl. (Dec. 18, 2013)); *see also* Order No. 365, p. 15.

[36] *See* Order No. 365, pp. 12-15 (emphasis added) (quoting Compensation Order, p. 2).

[37] First Jamin Decl., ¶¶ 33-34; Fee Committee Memo.

[38] First Jamin Decl., ¶¶ 34-46; Fee Committee Memo.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 8 of 30

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900   Fax (907) 277-1920*

submit any P Time to the Fee Committee, not receive any compensation from the 3% Fund.[39]  In contrast, Jamin recommended that Faegre be included in a group of three firms that made the most significant contributions to the *Exxon Valdez* litigation.[40]

The Fee Committee agreed with Jamin's recommendations to: (1) award Faegre an amount representing 14.9% of the 3% Fund;[41] and (2) not compensate RB&E – or the other 26 firms that did not submit any P Time – from the 3% Fund.[42]  In reaching its recommendation, "[t]he most important factor considered by the Committee was '[t]he relative efforts of, and benefits conferred upon the class by, the various counsel.'"[43]

In a June 12, 2007 memorandum to all direct-action counsel (Fee Allocation Memo), which included RB&E, Jamin summarized the Fee Committee's recommendations.[44]  The Fee Allocation Memo notified RB&E of the Fee Committee's recommendation not to award RB&E compensation from the 3% Fund based on its "judgment that of the 70 firms that have submitted time, the group of 27 firms that made no submission whatsoever of 'P' lodestar to the committee did not make any significant contribution to the management of this litigation."[45]

Over the following months, nine firms refused to accept the Fee Committee's proposal, and Committee members met with each of those firms and analyzed whether

[39] First Jamin Decl., ¶¶ 35-37; Fee Committee Memo, p. 8; Motion for Allocation, p. 13; Second Jamin Decl., ¶ 8 (Dec. 18, 2013).
[40] First Jamin Decl., ¶ 45; Fee Committee Memo, pp. 13-14.
[41] Motion for Allocation, p. 7; First Jamin Decl., ¶¶ 45, 47.  The other two "top contributors" to the litigation, Davis Wright Tremaine and Jamin Ebell Bolger & Gentry, were also recommended to receive 14.9% each.  Motion for Allocation, p. 7.
[42] *Id.*
[43] *Id.* at 20 (quoting *In re FPI/Agretech Secs. Litig.*, 105 F.3d 469, 474 (9th Cir. 1997)); First Jamin Decl., ¶ 57.
[44] Fee Allocation Memo; First Jamin Decl., ¶ 50.
[45] Fee Allocation Memo, p. 3; First Jamin Decl., ¶ 50.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 9 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

changes to the recommendation were warranted.[46] RB&E was not one of those nine firms; it did not express a refusal to accept the Fee Committee's recommendations or request a meeting with the Committee.[47]

On April 30, 2009, Exxon Valdez Plaintiffs filed All Plaintiffs' Motion for Allocation of Consolidated Case Fund (Fee Allocation Motion), seeking this Court's approval of the Fee Committee's allocation recommendations.[48] While a few firms objected to the proposed allocations recommended by the Fee Committee, RB&E was not one of them.[49]

This Court issued its Order for Allocation and Partial Distribution of 3% Fund on November 6, 2009, largely approving the Fee Committee's recommendations regarding allocation of the 3% Fund.[50] This Court ordered that 85% of the 3% Fund be distributed among the eligible firms at that time, with 14.8%[51] of that amount allocated to Faegre and 0% allocated to RB&E.[52] Three firms continued to object to the fee allocation, leading the Court to reserve 15% of the 3% Fund while those claims remained pending.[53] RB&E was not one of the three objecting firms.[54]

---

[46] Motion for Allocation, pp. 15-16; First Jamin Decl., ¶¶ 51-54; *see Exxon Valdez*, Dkt. No. 9410, Order for Allocation and Partial Distribution of 3% Fund (Nov. 6, 2009) (Fee Allocation Order) at Ex. A (attached as Exhibit O to the Torgerson Decl. (Dec. 18, 2013)).

[47] First Jamin Decl., ¶¶ 53-54; Second Jamin Decl., ¶¶ 7-8 (Dec. 18, 2013).

[48] Fee Allocation Motion.

[49] *See* Fee Allocation Order, pp. 2-3; Second Jamin Decl., ¶ 8 (Dec. 18, 2013).

[50] Fee Allocation Order, pp. 2-3; Complaint, ¶ 20 (Dkt. 1).

[51] The Fee Committee recommended that 14.9% of the 3% Fund be distributed to Faegre. Motion for Allocation, p. 7; First Jamin Decl., ¶¶ 45, 47. The Court minutely adjusted that amount to 14.8% of the Fund. Fee Allocation Order, pp. 2-3.

[52] Fee Allocation Order, pp. 9-10.

[53] *Id.* at 3, 9.

[54] *Id.* at 2-3 and Ex. A; Second Jamin Decl., ¶ 8 (Dec. 18, 2013).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 10 of 30

This Court issued its final order regarding disbursement of the remaining funds from the 3% Fund on February 22, 2011.[55]  That final distribution included allocation of 14.6%[56] of the remaining funds to Faegre and 0% to RB&E.[57]  At no time did RB&E (or Plaintiffs, as named partners from the now-dissolved firm of RB&E), appeal this Court's decisions regarding allocation of the 3% Fund.[58]

**B.    Plaintiffs Have Now Demanded Additional Payments from Faegre.**

Pursuant to the Fee Agreement, Faegre made a series of payments to RB&E, representing RB&E's share of attorneys' fees subject to the Agreement, between December 2002 and December 2011, totaling $9,509,424.[59]

In a June 1, 2011, letter to Faegre, Beiswenger alleged that Faegre was obligated to share amounts received from the 3% Fund with RB&E.[60]  Beiswenger wrote:

> Based upon the provision of the Fee Division Agreement . . . ., we believe that the funds received by [Faegre] from the case management pool [3% Fund] should be subject to the 70%/30% division that is provided for.  <u>Since we have not previously discussed this</u>, we wanted to bring it to your attention and get your thoughts on the matter.[61]

O'Neill, on behalf of Faegre, responded in a June 17, 2011 letter confirming that the Fee Agreement did not extend to the Court's awards to Faegre from the 3% Fund.  He wrote:

---

[55] *Exxon Valdez*, Dkt. No. 9699, Order re Adolph & Smyth Motion for Attorney Fees; Sixth Partial Distribution of 3% Fund (Feb. 22, 2011) (Final Distribution Order)(attached as Ex. P to the Torgerson Decl. (Dec. 18, 2013)); Complaint, ¶ 22 (Dkt. 1).

[56] The Court allocated 14.6% of the 3% Fund to Faegre in its final distribution because certain firms successfully challenged the initial decision to exclude them from receiving distributions; thus the funds were spread among a larger number of recipients.  *See* Final Distribution Order.

[57] *Id.*, Ex. A.

[58] Second Jamin Decl., ¶ 8 (Dec. 18, 2013).

[59] Torgerson Decl., Ex. Q (Payment Chart) (Dec. 18, 2013).

[60] Torgerson, Decl., Ex. R (06/01/11 Beiswenger Letter) (Dec. 18, 2013).

[61] *Id.* (emphasis added).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 11 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900    Fax (907) 277-1920*

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900  Fax (907) 277-1920

> The Fund awards had no connection to any client base and did reward people with no or one or two clients. Our clients' participation in the case played no role in the Fund award. Your efforts played no role in the Fund award.
>
> All counsel were invited to apply to the Fund. . . . [T]he district court order resolves issues of the Fund's allocation, you could have participated, and you chose not to do so.[62]

More than a year later, on August 21, 2012, Robinson sent Faegre a demand letter claiming entitlement to a share of the amount awarded to Faegre from the 3% Fund.[63] Faegre denied Plaintiffs' demand on September 13, 2012.[64]

Eight months later, on May 24, 2013, Robinson and Beiswenger filed this action.[65]

## III.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66]  "Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact."[67]  "A factual dispute is genuine only if a reasonable trier of fact could find in favor of the nonmoving party.  A mere scintilla of evidence supporting a nonmovant's position is insufficient to withstand

---

[62] Torgerson Decl., Ex. S (06/17/11 O'Neill Letter), p. 1 (Dec. 18, 2013).
[63] Torgerson Decl., Ex. T (08/21/12 Robinson Letter) (Dec. 18, 2013).
[64] Torgerson Decl., Ex. V (09/13/12 Busch Letter) (Dec. 18, 2013).
[65] *See* Complaint (Dkt. 1).
[66] Fed. R. Civ. P. 56(a).
[67] *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 12 of 30

summary judgment."[68]

The Fee Agreement provides that the "agreement shall be construed and interpreted in accordance with, and governed and enforced in all respects by, the laws of the State of Alaska and the Alaska Bar Rules."[69] Under both Alaska and federal law, the issue of "'[a]rbitrability is a question for the courts "[u]nless the parties clearly and unmistakably provide otherwise."'"[70] Because the Arbitration Clause is silent on the issue, this Court is the proper forum for a determination of arbitrability.[71] An agreement to arbitrate may be found to be invalid and unenforceable "upon grounds that exist at law or in equity for the revocation of a contract."[72]

## IV.    ARGUMENT

**A.    Allocation of the 3% Fund Was Subject to the Court's Equitable Authority, Which This Court Already Has Exercised.**

**1.    Principles Governing the Allocation of Attorneys' Fees in Class Actions Apply Here.**

As this Court is aware, *Exxon Valdez* involved both class-action and direct-action plaintiffs. There was no distinction, however, between class-action and direct-action

---

[68] *In re Ahaza Sys., Inc.*, 482 F.3d 1118, 1128 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted).

[69] Fee Agreement, p. 6, § 2.

[70] *Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*, 157 P.3d 470, 473 (Alaska 2007) (quoting *Alaska v. Pub. Safety Emps. Ass'n*, 798 P.2d 1281, 1285 (Alaska 1990) (citation omitted)); *see also* AS 09.43.020(a) (providing that the court determines the issue of the existence of an applicable agreement to arbitrate); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (internal quotation marks and citation omitted).

[71] *See Lexington Mktg. Grp.*, 157 P.3d at 473; Fee Agreement.

[72] AS 09.43.010(a).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 13 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900    Fax (907) 277-1920

recoveries; all recoveries were subject to the Plan of Allocation approved by this Court.[73] With the exception of six Native corporations, all Exxon Valdez Plaintiffs – both class action and direct action – joined in a Joint Prosecution Agreement in 1994 that called for allocation among the plaintiffs of all recoveries based on identified "Claim Categories."[74] This Court approved the Plan of Allocation reflecting the same principles outlined in the Joint Prosecution Agreement.[75]

Likewise, the Court issued its Compensation Order establishing that "[t]hree percent of <u>any</u> recovery received by <u>any</u> plaintiff, individually or as a member of a certified class, whether by judgment, settlement or otherwise . . . shall be contributed to the Consolidated Case Fund [the 3% Fund]."[76] The 3% Fund was a common fund specifically established by this Court to compensate "[c]ounsel who are active members of the CMT or who perform administrative and/or other tasks benefitting the <u>combined plaintiffs</u> at the request or direction of Co-Lead Counsel or the CMT."[77] As the Court appropriately recognized in exercising its equitable powers to determine distribution of fees, the 3% Fund was a common fund subject to class-action principles.

    2.    **The Allocation of Attorney' Fees in Class Actions Is Based on Principles of Equity, and the Court Has the Authority to Reject a Private Fee-Sharing Contract.**

"In class actions, the district court has broad authority over awards of attorneys'

---

[73] Plan of Allocation; Torgerson Decl., Ex. F (Joint Prosecution Agreement) (Dec. 18, 2013).
[74] Plan of Allocation, pp. 1-5; Joint Prosecution Agreement.
[75] Plan of Allocation.
[76] Compensation Order, p. 2 (emphases added).
[77] *Id.* (emphasis added).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 14 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

fees . . . ."[78] Awards distributed by the Court from a common fund recovered for the

benefit of the class are based on principles of equity, rather than contract:[79]

> [A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. The common-fund doctrine reflects the traditional practice in courts of equity, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees. The doctrine rests on the perception that <u>persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity</u> by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.[80]

As the Eleventh Circuit has articulated:

> Historically, the rationale entitling counsel to a percentage of the common fund <u>derives from the equitable power of the courts</u> under the doctrines of quantum meruit, *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885); unjust enrichment, *see, e.g., Trustees v. Greenough*, 105 U.S. (15 Otto) 527, 26 L. Ed. 1157 (1881); and later, what has become known as the "substantial" or "common benefit" doctrine.[81]

The Court's equitable authority is bolstered by Federal Rule of Civil Procedure

23(e), which requires that "[t]he claims, issues, or defenses of a certified class may be

settled, voluntarily dismissed, or compromised only with the court's approval."[82] The

need for court approval extends to fee-shifting agreements reached between class

---

[78] *In re FPI/Agretech Secs. Litig.*, 105 F.3d at 472 (citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994)).

[79] *See id.* at 474.

[80] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added; citations omitted).

[81] *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (emphasis added).

[82] Fed. R. Civ. P. 23(e).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 15 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

counsel.[83]

The Court's primary consideration with respect to the allocation of attorneys' fees from a common fund in a class action is to ensure the reasonableness of the award, including the reasonable distribution of fees among class counsel in a manner that reflects contributions made for the benefit of the class.[84] The Court's broad authority over attorneys' fees awarded in a class action extends to the authority to "refuse to accept a fee allocation agreement whenever there is good cause to do so."[85]

The Ninth Circuit expressly held, in *In re FPI/Agretech Securities Litigation*, "that a court may reject a fee allocation agreement where it finds that the agreement rewards an attorney in disproportion to the benefits that attorney conferred upon the class – even if the allocation in fact has no impact on the class."[86] In that case, the Ninth Circuit affirmed the district court's refusal to adhere to a fee-sharing proposal agreed upon by class counsel with respect to fees allocated from a jury verdict award in a class-action matter.[87] The court held that awards from common funds in class actions "derive from principles of equity, not contract,"[88] and therefore "district courts have the authority to reject a fee allocation that does not accurately reflect the amount of work performed by

---

[83] *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 977 (7th Cir. 2003) (referencing a fee-shifting agreement in a class action).

[84] *See In re FPI/Agretech Secs. Litig.*, 105 F.3d at 473; *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987).

[85] *In re FPI/Agretech Secs. Litig.*, 105 F.3d at 473.

[86] *Id.*; *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 225 (holding that the fact a fee sharing agreement "did not directly affect the class fund is of little consequence, since we have already determined that the district court's responsibility . . . goes beyond concern for only the overall amount of fees awarded and requires attention to the fees allocated to individual class counsel").

[87] *See In re FPI/Agretech Secs. Litig.*, 105 F.3d at 471-74.

[88] *Id.* at 474.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 16 of 30

the various attorneys."[89]

In re FPI/Agretech echoes the decisions of other jurisdictions. In a decision cited with approval by the FPI/Agretech court, In re Agent Orange Product Liability Litigation, the Second Circuit similarly struck down a fee-sharing agreement entered into between class counsel.[90] The attorneys in that case had agreed to divide attorneys' fees awarded pursuant to the common fund doctrine in a manner that was not proportionate to each attorney's actual contributions to the case.[91] The Second Circuit held "that the fee sharing agreement violates the principles for awarding fees in an equitable fund action":[92]

> We reject [prior] authority . . . to the extent it allows counsel to divide the award among themselves in *any* manner they deem satisfactory under a private fee sharing agreement. Such a division overlooks the district court's role as protector of class interests . . . and its role of assuring reasonableness in the awarding of fees in equitable fund cases.[93]

The primary holding of the *Agent Orange* court was the principle "that the distribution of fees must bear some relationship to the services rendered."[94] "The test to be applied is whether, at the time a fee sharing agreement is reached, class counsel are placed in a position that might endanger the fair representation of their clients and whether they will be compensated on some basis other than for legal services

---

[89] *Id.* at 473; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1225 (S.D. Fla. 2006) ("[A] federal court always has authority to reject agreements allocating fees among class counsel whenever there is cause to do so.").

[90] *In re Agent Orange Prod. Liab. Lit.*, 818 F.2d 216.

[91] *Id.* at 217, 222-23. ("The distortion was so substantial as to increase the fees awarded to one investor by over twelve times that which the district judge had determined to be just and reasonable, and, in a second case, to decrease the otherwise just and reasonable compensation of a non-investor by nearly two-thirds." *Id.* at 222-23.

[92] *Id.* at 226.

[93] *Id.* at 223 (italics in original; emphasis added).

[94] *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 17 of 30

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900   Fax (907) 277-1920*

performed."[95] Such distributions of fees have the potential for abuse, as counsel may be incentivized to settle a case early or may fail to zealously advocate on behalf of the clients if guaranteed substantial compensation for little actual effort.[96] The *Agent Orange* court also recognized that "potential conflicts of interest in class contexts are not examined solely for the actual abuse they may cause, but also for potential public misunderstandings they may cultivate in regard to the interests of class counsel."[97] The court clarified that "the potentially negative public perception of an agreement that awards an [attorney] over twelve times the amount the district court has determined to be the value of his services to the class provides additional justification for invalidating the agreement . . . ."[98]

In this case, Plaintiffs are similarly seeking attorneys' fees from the 3% Fund that are grossly disproportionate to the value of the services RB&E provided for the benefit of all Exxon Valdez Plaintiffs. As in *FPI/Agretech* and *Agent Orange¸* RB&E's reliance on the Fee Agreement for its claim to a substantial share of the 3% Fund is inconsistent with the equitable principles applicable to the Court's allocation of common funds.

This concept was again confirmed by a district court, in *Allapattah Services, Inc. v. Exxon Corp.*, that similarly rejected a private fee-splitting agreement that "would result in a grossly disproportionate award among the five law firms in relation to services actually rendered, and benefits bestowed on the class,"[99] including by awarding fees to

---

[95] *Id.* at 224.
[96] *See id.* at 223-24.
[97] *Id.* at 225.
[98] *Id.*
[99] *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1227.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 18 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

firms that had stopped work on the case years before other firms had.[100]  The court found

that the distribution agreed upon by counsel "would be blatantly and grossly

disproportionate to the actual work undertaken, and contrary to the reality of who

obtained the actual benefits for the Class,"[101] concluding that "an allocation of fees

should be based on the relative contributions that each law firm provided to the Class."[102]

Cases such as those confirm that the allocation of fees from a common fund is

reserved for the court, as a matter of equity.  A private fee-sharing agreement that does

not comport with the equitable principles underlying the class action will not supersede a

court's allocation of attorneys' fees from a common fund.

### 3.  This Court Allocated Awards from the 3% Fund Using the Appropriate Equitable Principles.

This Court already has distributed attorneys' fees from the 3% Fund on the basis

of the equitable principles cited in cases such as *In re FPI/Agretech*.  This Court

established a Fee Committee to monitor the contributions of the approximately 70 law

firms involved in the *Exxon Valdez* litigation, to extensively analyze those contributions,

and to make recommendations to this Court regarding the appropriate allocation of

payments from the 3% Fund based upon each firm's relative contributions.  This Court

then decided how to allocate the 3% Fund.

The Court's decision included in its conclusion that Faegre made substantial

contributions to the litigation to the benefit of the class, warranting payment from the 3%

Fund of approximately 14.8% of the Fund.  In addition, the Court correctly determined

that RB&E was one of many firms not entitled to payment from the 3% Fund because it

---

[100] *See id.* at 1231-32.
[101] *Id.* at 1232.
[102] *Id.* at 1227.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 19 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

did not contribute <u>any</u> "P Time" for the benefit of the class plaintiffs. From these decisions, RB&E took no appeal.

The Court's allocation decision complied with the Ninth Circuit's directive that allocations from a common fund should "accurately reflect the amount of work performed by the various attorneys" and should not "reward[] an attorney in disproportion to the benefits that attorney conferred upon the class."[103] If Plaintiffs, as former partners of the now-dissolved firm RB&E, were to receive 30% of the fees issued to Faegre by this Court from the 3% Fund, which is what they seek, they would receive approximately 4.4% of the entire Fund,[104] an amount "blatantly and grossly disproportionate to the actual work undertaken, and contrary to the reality of who obtained the actual benefits for the Class."[105]

### 4. Plaintiffs' Right to Fee Payments from the 3% Fund Is Exclusively Subject to This Court's Jurisdiction and Is Not Arbitrable.

This Court already has issued its final determination regarding the allocation of fees from the 3% Fund.[106] As discussed above, allocations from common funds in class actions – such as the 3% Fund – are based exclusively on the Court's equitable authority.

---

[103] *In re FPI/Agretech Secs. Litig.*, 105 F.3d at 473.

[104] Thirty percent of Faegre's approximately 14.8% would result in approximately 4.4% of the Fund. Significantly, only 10 of the approximately 70 law firms involved in the *Exxon Valdez* litigation were found by this Court to have contributed sufficiently to the case to receive more than the 4.4% of the Fund that Plaintiffs now claim. *See* Final Distribution Order, p. 10. Of those 10 firms, the firm that contributed the <u>lowest</u> number of "P Time" hours, Hill Betts & Nash, contributed 12,566 P Time hours between 1989 and 2008 and was awarded an approximately 4.8% share of the Fund. *Id.*; First Jamin Decl., ¶ 108. In contrast, RB&E contributed <u>zero</u> hours of P Time to the case and is claiming a windfall of approximately 4.4% of the Fund. Notably, pursuant to the Fee Agreement, Faegre has already paid RB&E $2,590.03 for every (non-P Time) hour RB&E spent on the *Exxon* litigation. Torgerson Decl., Ex. Q (Dec. 18, 2013).

[105] *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1232.

[106] *See* Fee Allocation Order; Final Distribution Order.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 20 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900  Fax (907) 277-1920

They are not subject to private fee-splitting agreements that do not adhere to the equitable principles that control such distributions. Therefore, even if the Fee Agreement at issue here were intended to apply to the 3% Fund, which it was not, this Court's fee allocation decisions would not be subject to the Fee Agreement. And the issue is not arbitrable. The Court has the exclusive authority to render this decision. The Fee Agreement in which the Arbitration Clause is contained does not and cannot govern the allocation of fees awarded from the 3% Fund.

### 5. This Court's Fee Decision Should Be Given Collateral Estoppel Effect.

Furthermore, this Court's decision regarding the allocation of fees from the 3% Fund was a final determination with collateral estoppel effect. Under Alaska law:

> [C]ollateral estoppel, or issue preclusion, bars the relitigation of issues actually determined in [earlier] proceedings. We require four elements before collateral estoppel may be applied: (1) the party against whom preclusion is sought was a party or privy to the first action; (2) the issue is identical to the issue previously decided; (3) a final judgment on the merits was issued; and (4) the determination of the issue was essential to the final judgment.[107]

This Court's prior decision satisfies all four elements of collateral estoppel. First, Plaintiffs, as named partners of RB&E, were privy to the first action, in which RB&E's claims for compensation from the 3% Fund were determined. Second, the issue at stake in this action is identical to an issue previously decided by this Court: RB&E's entitlement to compensation from the 3% Fund. Third, this Court issued final judgments on the merits of that issue, determining that RB&E was not entitled to an award from the 3% Fund. Finally, the Court's determination of that issue was one of the essential

---

[107] *McAlpine v. Pacarro*, 262 P.3d 622, 627 (Alaska 2011) (second brackets in original; internal quotation marks and citations omitted).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 21 of 30

components of the final judgment regarding the Court's fee allocation decision, which decided the appropriate awards from the 3% Fund for each of the approximately 70 firms involved in the *Exxon Valdez* litigation.

The firms that disagreed with the Fee Committee's recommendations had the opportunity to raise those objections with the Committee. The Fee Committee met with each of nine firms that objected to the recommended allocations; RB&E was not one of them. Neither was RB&E one of the firms that filed formal objections with this Court. Nor did RB&E file an appeal of this Court's fee allocation decisions. At no point during the process did RB&E object to or appeal from the Fee Committee's recommendation to exclude RB&E from receipt of any distributions from the 3% Fund or the Court's order adopting that recommendation.

Plaintiffs' reliance now on the Fee Agreement is, at its core, an untimely appeal of the Court's fee allocation decision. The Court issued its first Fee Allocation Order in November 2009 and approved the final distribution from the 3% Fund in February 2011. Rather than timely appealing those orders through the proper channels,[108] Plaintiffs waited more than two years after the final distribution before filing a lawsuit collaterally attacking the Court's decision.

Plaintiffs' request to arbitrate this issue is an inappropriate attempt to circumvent the Court's exclusive authority to determine fee allocation issues in class actions. It should be dismissed as a matter of law.

**B.**    **Even Under Its Own Terms, the Fee Agreement Does Not Cover Funds Awarded from the 3% Fund.**

Even if the issue of allocating fees from the 3% Fund were not exclusively

---

[108] *See* Fed. R. App. P. 4 (governing timing of appeals taken from this Court).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 22 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

reserved to this Court and were not already finally decided, the Arbitration Clause does not apply to Plaintiffs' claims under the terms of the Fee Agreement itself. "Because arbitration is a matter of contract, parties can only be compelled to arbitrate a matter where they have agreed to do so."[109] Alaska law provides that the Court shall order arbitration only "if the agreement [to arbitrate] is found to exist."[110] The parties to the Fee Agreement did not agree to arbitrate Plaintiffs' claim to 30% of Faegre's share of the 3% Fund.

Faegre and RB&E agreed to arbitrate only claims "arising out of or relating to this [Fee] Agreement, or breach thereof."[111] The Court's awards to Faegre of sums from the 3% Fund are not subject to the Fee Agreement and therefore do not "aris[e] out of or relat[e] to this Agreement."[112]

Faegre and RB&E agreed that the Fee Agreement covers only: (1) "contingent fees collected from the client[s]"[113] of Faegre and RB&E in the *Exxon Valdez* litigation; and (2) "<u>hourly fees</u> paid to both firms from the Exxon case management fee structure approved by the court or from any other source."[114] Allocations from the 3% Fund fall into neither category.

First, they were not contingent fees collected from Faegre's and RB&E's direct-

---

[109] *Lexington Mktg. Grp.*, 157 P.3d at 477 (citing *AT&T Techs., Inc.*, 475 U.S. at 648).
[110] AS 09.43.020(a).
[111] Fee Agreement, p. 6, § 6.
[112] *Id.*
[113] *Id.* at 3, § 5(a)(i); Complaint ¶ 17 (Dkt. 1). Subsection 5(a)(i) of the Fee Agreement establishes the 70%/30% division of contingent fees received from the parties' direct-action clients, while Subsection 5(a)(ii) carves out an exception for contingent fees collected on claims originated by other firms, which are primarily subject to a 90%/10% division. Fee Agreement, p. 3, § 5(a)(i),(ii).
[114] *Id.* at 4, § 5(a)(iii) (emphasis added); Complaint ¶ 17 (Dkt. 1).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 23 of 30

action clients. Instead, the 3% Fund was created by this Court to compensate "[c]ounsel who are active members of the CMT or who perform administrative and/or other tasks <u>benefitting the combined plaintiffs at the request or direction of Co-Lead Counsel or the CMT</u>,"[115] and disbursements were made from the 3% Fund only to those firms that applied to the Fee Committee and were found by the Fee Committee and this Court to be significant contributors to the litigation benefitting <u>all</u> Exxon Valdez Plaintiffs.[116]

Second, neither were the payments from the 3% Fund "<u>hourly fees</u> paid to both firms from the Exxon case management fee structure approved by the court."[117] The 3% Fund was not linked to "hourly fees," which the Alaska courts have distinguished from contingency fees in that hourly fees represent the actual time worked by the attorney and are "calculated by multiplying a reasonable hourly rate by the attorney's time."[118] Disbursements from the 3% Fund did not involve compensation of counsel on the basis of the recipient attorneys' hourly rates multiplied by the time they spent on the litigation.[119] Rather, certain firms were awarded a percentage of the 3% Fund based on equitable factors, including:

> the contributions made by the various firms in advancing the plaintiffs' case, the degree of responsibility assumed, the quality of work performed, the amount of time contributed, and the financial risk assumed.[120]

Indeed, as noted in the Exxon Valdez Plaintiffs' Motion for Allocation, the comparative

---

[115] Compensation Order, p. 2 (emphasis added); *see also* Order No. 365, p. 15.
[116] *See* Section II(A)(4), above.
[117] Fee Agreement, p. 4, § 5(a)(iii) (emphasis added).
[118] *Okagawa v. Yaple*, 234 P.3d 1278, 1280 (Alaska 2010); *see also, e.g., Dep't of Revenue v. Cowgill*, 115 P.3d 522, 524-25 (Alaska 2005) (discussing distinction between contingency fees and hourly fees).
[119] *See, e.g.,* Compensation Order; Motion for Allocation; Fee Allocation Order; First Jamin Decl.
[120] First Jamin Decl., ¶ 57; Motion for Allocation, pp. 16-26.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 24 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

billing rates of the attorneys who worked on the case were widely variable, and those rates did not dictate the amounts awarded from the 3% Funds to the recipient firms.[121] Further, several firms that performed "P Time" work in the *Exxon Valdez* litigation did not receive any payments from the 3% Fund, based upon the Fee Committee's finding that those firms

> may have made some contribution to management of the overall case or did some work for the benefit of all plaintiffs rather than just their own client group, [but] their contribution was far less substantial than those of the . . . other firms . . . .[122]

In short, disbursements from the 3% Fund were not "hourly fees."

The fact that the 3% Fund is not covered by the Fee Agreement is confirmed by the Fee Agreement's drafting history. Faegre and RB&E included Subsection 5(a)(iii) in the Fee Agreement due to their concern that the Court could impose a lodestar structure on the direct-action plaintiffs' attorneys, voiding Faegre's and RB&E's individual fee agreements with their direct-action clients.[123] Subsection 5(a)(iii) ensured that Faegre and RB&E would continue to split attorneys' fees collected in connection with their direct-action clients; it did not extend to allocations awarded from the 3% Fund for P Time contributed for the benefit of <u>all</u> Exxon Valdez Plaintiffs.[124]

Because the 3% Fund payments were not contingent fees collected from Faegre's and RB&E's direct-action clients and were not hourly fees paid from a case management

---

[121] *See* Motion for Allocation, pp. 20-21; First Jamin Decl., ¶ 106.
[122] First Jamin Decl., ¶ 27.
[123] Torgerson Decl., Ex. S (06/17/11 O'Neill Letter), p. 2 (Dec. 18, 2013).
[124] *Id.* Significantly, Plaintiff Beiswenger acknowledged in his letter of June 1, 2011, that the parties had not previously discussed application of the Fee Agreement to amounts awarded to Faegre from the 3% Fund. Torgerson Decl., Ex. R (Dec. 18, 2013).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 25 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

structure approved by the Court, the payments were not subject to the Fee Agreement.[125] As such, those disbursements did not arise from or relate to the Fee Agreement and are not subject to the Arbitration Clause.

**C.      Division of Fees Is Subject to Alaska Bar Rule 35(e), Which Requires Division Based on Services Performed.**

The parties also agreed that "[t]he relationship between [Faegre] and RB&E, and the division of fees herein are governed by Alaska Bar Rule 35(e), concerning fee division between attorneys . . . ."[126] Alaska Bar Rule 35(e) provides:

> Fee Divisions Between Attorneys.  A division of fees between attorneys who are not in the same law firm may be made only if:
>
> (1) the division is in proportion to the services performed by each attorney or, by written agreement with the client, each attorney assumes joint responsibility for the representation;
>
> (2) the client is advised of and does not object to the participation of all the attorneys involved; and
>
> (3) the total fee is reasonable.[127]

Although the parties represented in the Fee Agreement "that RB&E at all times has had and shall continue to have joint responsibility for the representation of the clients [and] that the clients have been advised of and do not object to joint representation,"[128] the 3% Fund impacts "clients" beyond the direct-action clients for whom Faegre and

---

[125] *See* Fee Agreement, pp. 3-4, § 5(a).

[126] Fee Agreement, p. 1, § 1; *see also id.* at p. 2, § 3(a) (agreeing "[t]hat this Agreement is subject to Alaska Bar Rule 35(e)").

[127] (Emphasis added.)  The parties similarly agreed that the Fee Agreement "shall be construed and interpreted in accordance with, and governed and enforced in all respects by, the laws of the State of Alaska and the Alaska Bar Rules."  Fee Agreement, p. 6, § 2. Alaska Bar Rule 35(a) expressly provides:  "An attorney's fee will be reasonable." (Emphasis added.)

[128] Fee Agreement, p. 2, § 3(a).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 26 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900    Fax (907) 277-1920*

RB&E provided direct representation.[129] Faegre and RB&E did not enter into written agreements with all class plaintiffs regarding their joint representation of clients in this litigation. Thus the division of fees regarding the 3% Fund, which stems from representation of plaintiffs other than direct-action claimants, must be made "in proportion to the services performed by each attorney."[130] This Court already allocated fees from the 3% Fund on that basis.

At a minimum, in order to ensure that the class plaintiffs were adequately protected, any fee-splitting agreement affecting the common fund should have been brought to the specific attention of the Court and approved by the Court before allocations from the 3% Fund were made.[131] Faegre would have done so had the Fee Agreement been intended to extend to the 3% Fund, but it was not so intended.[132]

## D.    The Arbitration Clause Is Unenforceable Due to Impossibility.

Finally, the Arbitration Clause is unenforceable because it is impossible to perform. Under Alaska law, impossibility of performance discharges a party from

---

[129] *See* Compensation Order (establishing 3% Fund based on recoveries made on behalf of <u>all</u> Exxon Valdez Plaintiffs).

[130] Alaska Bar Rule 35(e)(1); *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2013 U.S. Dist. LEXIS 49885, at *84-85 (N.D. Cal. Apr. 1, 2013) (noting that even if existence of fee-splitting agreement had been proven, it likely would have been unenforceable under analogous federal and California rules requiring written consent to a fee-splitting agreement, because class plaintiffs were not even informed of its existence).

[131] *See, e.g., In re Agent Orange Prod. Liab. Lit.*, 818 F.2d at 220 ("Recognizing the practical problem of client consent in class actions, . . . the district court concluded that its duty to protect the rights of the class ordinarily could not be performed unless the attorneys involved notified the court of the existence of [a fee-splitting] agreement 'as soon as possible.'" (citation omitted)); Fed. R. Civ. P. 23(e).

[132] *See* 06/17/11 O'Neill Letter, p. 2.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 27 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

performance under the contract. [133]   "The usual remedy when impossibility of performance is demonstrated by a party to a contract is rescission of that contract."[134]

Here, the Arbitration Clause provides that subject claims "shall be settled by arbitration in accordance with the rules of the Alaska Bar Association."[135]  But the Alaska Bar Association Rules establish procedures only for arbitration of fee disputes between attorneys and their <u>clients</u>.[136]  Plaintiffs attempt to minimize the import of this material flaw in the Arbitration Clause by pointing, in their Complaint, to AS 09.43.030, which provides:

> If the arbitration agreement provides a method of <u>appointment of arbitrators</u>, this method shall be followed. If no <u>method of appointment</u> is provided, or if the agreed method fails or for any reason cannot be followed, or when before the hearing an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court on application of a party shall appoint one or more arbitrators.[137]

But appointment of arbitrators is not the only aspect of the Alaska Bar Association procedures that the parties referenced in the Arbitration Clause.  The parties expressly provided that claims "shall be settled by arbitration in accordance with the rules of the Alaska Bar Association" (*i.e.,* that the Alaska Bar Association arbitration process was intended to apply in its entirety).[138]  That process – not just the initial appointment of the arbitrators – excludes disputes that are not between an attorney and his or her client,

---

[133] *See N. Corp. v. Chugach Elec. Ass'n*, 518 P.2d 76, 80 (Alaska), *vacated on other grounds by* 523 P.2d 1243 (Alaska 1974).
[134] *Valdez v. Valdez Dev. Co.*, 523 P.2d 177, 180 n.3 (Alaska 1974).
[135] Fee Agreement, p. 6, § 6.
[136] *See* Alaska Bar Rule 34(a).
[137] (Emphases added.)
[138] Fee Agreement, p. 6, § 6.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 28 of 30

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900   Fax (907) 277-1920*

and the procedures are specifically tailored to apply to attorney/client fee disputes.[139] Because arbitration "in accordance with the rules of the Alaska Bar Association" is impossible,[140] the Arbitration Clause should be rescinded and deemed unenforceable.[141]

## V. CONCLUSION

This Court already determined the appropriate allocation of fees from the 3% Fund, pursuant to its equitable powers with respect to common funds in class-action litigation. Plaintiffs failed to challenge the Court's fee allocations through the appropriate channels at the time those allocations were made and instead have raised what is, in effect, an untimely appeal of this Court's decisions. Plaintiffs' attempt to secure a windfall grossly disproportionate to RB&E's contributions to the *Exxon Valdez* litigation is barred by this Court's well-reasoned prior determinations regarding the allocation of fees and is not an issue subject to arbitration. Defendant Faegre respectfully requests that the Court dismiss Plaintiffs' Complaint for Appointment of Arbitrators as a matter of law, pursuant to Rule 56.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900    Fax (907) 277-1920*

---

[139] *See, e.g.,* Alaska Bar Rule 34(a) (establishing procedures for attorney/client fee disputes); Alaska Bar Rule 40 (specifying arbitration procedures, including requirement that arbitration "be initiated by <u>a client</u> by filing a petition with the Bar Counsel on a form provided by the Bar." Alaska Bar Rule 40(a) (emphasis added)).
[140] Fee Agreement, p. 6, § 6.
[141] *See Valdez*, 523 P.2d at 180 n.3.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 29 of 30

DATED: December 18, 2013

STOEL RIVES LLP


By:/s/ James E. Torgerson
    JAMES E. TORGERSON
    (BAR NO. 8509120)

Attorney for Defendant


## CERTIFICATE OF SERVICE

     I hereby certify that on December 18, 2013, I filed a true and correct copy of the

foregoing document with the Clerk of the Court for the United States District Court –

District of Alaska by using the CM/ECF system.  Participants in this Case No. 3:13-cv-

00086-HRH who are registered CM/ECF users will be served by the CM/ECF system.


/s/ James E. Torgerson
James E. Torgerson

74547882.8 0081345-00001

STOEL RIVES LLP

510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900    Fax (907) 277-1920

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Robinson, et al. v. Faegre Baker Daniels LLP*, 3:13-cv-00086-HRH
Page 30 of 30