Jonathon A. Katcher
Pope & Katcher
421 W. 1st Ave., Suite 220
Anchorage, AK 99501
Telephone: (907) 272-8577
Email: jkatcher@alaska.net
Attorneys for Plaintiffs
ARTHUR S. ROBINSON and
ALLAN BEISWENGER

Chester D. Gilmore
Cashion Gilmore LLC
421 W. 1st Ave., Suite 247
Anchorage, AK 99501
Telephone: (907) 222-7934
Email: chester@cashiongilmore.com
Attorneys for Plaintiffs
ARTHUR S. ROBINSON and
ALLAN BEISWENGER

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARTHUR S. ROBINSON, and<br>ALLAN BEISWENGER,<br><br>                Plaintiffs,<br>    v.<br><br>FAEGRE BAKER DANIELS,<br><br>                Defendant. | 3:13-cv-00086 HRH |

**PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT IN THE
EVENT THE COURT DOES NOT ORDER ARBITRATION**

If, and only if, the Court declines to enforce the arbitration clause, this becomes a simple contract case.[1] The Court should grant summary judgment to Robinson and Beiswenger on their complaint, and set a trial on damages because: a) Alaska law applies and the Court should enforce the reasonable expectations of the parties; b) the reasonable expectation of the parties was that "[a]ttorney's fees for all claims" – including the 3% Fund proceeds -- were subject to the 1992 agreement; and c) FBD has waived its equitable arguments by failing to raise them in the Exxon litigation.

### A. Alaska law applies, and the Court must give effect to the reasonable expectations of the parties

According to the 1992 agreement's choice of law clause, Alaska law applies.[2]

Under Alaska law, the trial court's goal is to "give effect to the reasonable expectations of the parties" when construing a contract.[3] To determine the reasonable expectations of the parties, the trial court looks to the language of the contract as a whole, the object of the contract, the circumstances surrounding its adoption, and case law interpreting its provisions.[4] While extrinsic evidence may be relevant to determining meaning,

---

[1] By cross-moving for summary judgment, the plaintiffs do not waive their argument that the Court should compel arbitration.

[2] Docket 1-1 p. 6 ¶ 2.

[3] Monzingo v. Alaska Air Grp., Inc., 112 P.3d 655, 660-61 (Alaska 2005).

[4] Id.

"[t]he words of the contract are nevertheless the most important evidence of intention."[5]

**B.     The reasonable expectations of the parties were that "[a]ttorney's fees for all claims" – including the 3% Fund proceeds -- were subject to the 1992 agreement**

1. The plain language and object of the 1992 agreement

The intention of the parties in creating the 1992 agreement was that it would "supersede[], modifie[] and amend[] all prior written and/or oral agreements concerning the division of attorney's fees and payment of costs in the . . . the 'Exxon Valdez' oil spill case."

According to the 1992 agreement, "**[a]ttorney's fees for all claims** . . . shall be divided on the basis of 70% to F&B and 30% to RB&E of the contingent fees collected from the client."[6]  Further, "[a]ll hourly fees paid to both firms **from the Exxon case management fee structure approved by the court** or from any other source shall be allocated on the same basis, 70% F&B, 30% RB&E."[7]  And, finally, "**[a]ll Exxon related claims of any type** whether initiated by RB&E, F&B or other firms, arising out of the Exxon litigation shall be subject to this Fee Agreement."[8]

Thus the plain language of the 1992 agreement demonstrates that it was the parties' sole agreement to divide any and all fees (contingent, hourly,

---

[5] K & K Recycling, Inc. v. Alaska Gold Co., 80 P.3d 702, 712 (Alaska 2003).

[6] Exhibit 1-1 p.3 § 5(a)(i) (emphasis added).

[7] Exhibit 1-1 p. 4 § 5(a)(iii) (emphasis added).

[8] Exhibit 1-1 p.4 § 5(a)(iii)(b) (emphasis added).

and "from the Exxon case management fee structure approved by the court") from the Exxon Valdez oil spill case pursuant to the agreement's terms. The proceeds from the 3% Fund are – indisputably – "attorney's fees" from the Exxon Valdez oil spill case.

2. The Circumstances Surrounding the Adoption of the 1992 agreement

The parties formed the 1992 agreement three months after the Court's Order Establishing Regime for Compensation of Plaintiffs' Counsel – the order which, in part, established the 3% Fund.[9] The order did not provide specifics about what criteria the Court would use to allocate the 3% Fund.

The parties knew about the order. And they intended the 1992 agreement to be their final, encompassing deal.[10] FBD's argument that the 1992 agreement does not apply to the 3% Fund makes no sense, because if the parties had intended to exclude the 3% Fund from the agreement they would have said as much. The 1992 agreement's failure to *exclude* the 3% Fund from the scope of its fee division provisions is determinative. Instead, the 1992 agreement specifically applies to "**[a]ll Exxon related claims of any type. . .**"[11] And "**[a]ttorney's fees for all claims** . . . shall be divided on the

---

[9] Exhibit 19-4.

[10] Exhibit 1-1 p. 2 §3(c): "it is the intention of F&B and RB&E that the fee division set out in this is final and no further modification shall be made without mutual consent of both parties in writing."

[11] Exhibit 1-1 p.4 § 5(a)(iii)(b) (emphasis added).

basis of 70% to F&B and 30% to RB&E of the contingent fees collected from the client."[12]

The 1992 agreement also specifies that "[a]ll hourly fees paid to both firms **from the Exxon case management fee structure approved by the court** or from any other source shall be allocated on the same basis, 70% F&B, 30% RB&E."[13] This provision is the sole reference to the court's recent imposition of a fee structure on the case, and demonstrates the parties' expectation that they would divide any future 3% Fund proceeds according to the 1992 agreement.

The plain language of the 1992 agreement controls this case, and the Court should grant summary judgment in favor of the plaintiffs.

### C. FBD has waived its argument that the 1992 agreement disproportionately favors Robinson and Beiswenger

In the 1992 agreement, FBD expressly waived its ability to "claim in the . . . Exxon cases against RB&E for attorney's fees above those identified in paragraphs four and five of this Agreement based on the Dragelevich case."[14] In Dragelevich v. Kohn, Milstein, Cohen & Hausfeld, the district court held that an attorney who performed only an incidental role in an antitrust litigation

---

[12] Exhibit 1-1 p.3 § 5(a)(i) (emphasis added).

[13] Exhibit 1-1 p. 4 § 5(a)(iii) (emphasis added). In its motion, FBD disputes the characterization 3% Fund proceeds as "hourly fees." FBD Summary Judgment Motion at 29. However, it bases this on extrinsic evidence regarding how the Court ultimately allocated the 3% Fund.

[14] Exhibit 1-1 p. 2 § 3(b).

*3:13-cv-00086-HRH* Pltf's Cross Motion for S.J.　　　　　　　Page 5 of 7
Case 3:13-cv-00086-HRH   Document 28   Filed 01/31/14   Page 5 of 7

could not enforce a private fee-splitting agreement.[15] FBD's waiver further applied to "any other similar case or similar line of cases that may arise in the future, or under any other case law, rule of professional responsibility or professional canon . . ."[16]

Consistent with this understanding, FBD did not seek the Court's assistance to set aside the 1992 agreement when it divided its share of the direct action proceeds. It divided its award with Robinson and Beiswenger pursuant to the 1992 agreement. It also failed to assert that the Court should set aside the parties' 1992 agreement at the time of allocation of the 3% Fund.

By the terms of the 1992 agreement, FBD has waived its ability to request equitable relief from this Court.

## CONCLUSION

Under AS 09.43.030, the Court should order arbitration, select arbitrators from the Alaska Bar Association's Third Judicial District list,[17] and order that the arbitration to be conducted pursuant to the Bar Association's rules.

In the alternative, if the Court does not compel arbitration of the plaintiffs' claims, it should grant summary judgment for the plaintiffs.

---

[15] 755 F. Supp. 189 (N.D. Ohio 1990).

[16] Exhibit 1-1 p.2 § 3(b).

[17] Complaint, dkt 1, Exhibit 4.

DATED this 31st day of January, at Anchorage, Alaska.

                                                  POPE & KATCHER
                                                  Attorneys for Plaintiffs

                                                  <u>/s/ Jonathon A. Katcher</u>
                                                  Jonathon A. Katcher
                                                  ABA 8111104


                                                  CASHION GILMORE LLC
                                                  Attorneys for Plaintiffs

                                                  <u>/s/ Chester D. Gilmore</u>
                                                  Chester D. Gilmore
                                                  ABA 0405015

<u>Certificate of Service</u>

I hereby certify that on January 31, 2014,
a copy of the foregoing document was
served via email
on
James E. Torgerson
Stoel Rives LLP
510 L Street Suite 500
Anchorage, AK 99501

<u>/s/ Jonathon A. Katcher</u>